TUCKER, Judge.
The case was shortly this:
Wilson purchased sixteen pipes of Madeira wine for .¿'1200, of R. T. Hooe & Co. ; for which he paid them two notes of $>2000 each, drawn by John Nicolson of Philadelphia, payable to William Moulder, junr., and endorsed by him, and afterwards endorsed in blank by Wilson; upon which R. T. Hooe & Co. signed the following instrument :
“Whereas we have sold unto William Wilson 16 pipes of Madeira wine for the sum of ¿1200, and have received from him, in payment, two notes of John Nicolson’s for $>2000 each, dated 19th Sept. 1795, at twelve months date, payable to Moulder, jr. and endorsed by him and William Wilson: Now we hereby agree, that in case the said notes are protested for nonpayment, we will not apply to, or call on the said W. Wilson for payment, until after we get judgment against the said Nicolson and Moulder, and they are found insufficient to discharge the same. N. B. It is understood, that if Moulder does not reside in Philadelphia, we will not be obliged to issue a writ, or execution, against him. (Signed), R. T. Hooe & Co.”
'The note which is spread upon the record by demanding oyer of it, is in these words, and with the following endorsements :
“Phila. Sept. 19, 1795. Twelve months after date I promise to pay W. Moulder, jr. or order S2000 for value received. John Nicolson.” “Endorsed, W. Moulder, jr. W. Wilson, R. T. Hooe,” (omitting the word Co. or company.)
The note not having been paid, by either Nicolson or Moulder, suit was brought thereon in Alexandria hustings court; where the plaintiff had judgment; and on an appeal to the district court at Dumfries that judgment was reversed, and thereupon an appeal was taken to this court.
There are two counts in the declaration.
The first count states the making of the note, and the several endorsements, in the usual form; and then proceeds thus: And the said plaintiff in fact says, that after the said assignment so made, and at the expiration of the said twelve months in the same note mentioned, to wit: on the 19th *884 of Sept. 1796, (not saying where,) the said plaintiff shewed the said note and the endorsement, to the said John Nicolson, and then and there requested him to pay the contents, &c., but the said John Nicolson then and there refused to pay the same: whereof the defendant, afterwards, to wit: the day and year aforesaid, at Alexandria aforesaid, had notice. By reason whereof, and of the act of assembly in such cases made, an action accrued to the plaintiff, &c.
The second count - is for money had and received to the plaintiff’s use.
The defendant pleaded fdur several pleas: which, as there'is no distinction made in the pleas, must be taken as going to both counts in the declaration.
1. Non assumpsit; on which issue is taken.
• 2. For further plea, by protestation, that he never did assign the note in the declaration mentioned to the said R. T. Hooe, the plaintiff, he saith, that, on the 18th of June, 1796, at the town, -&c.- he as- ' signed two notes to R.' T. *Hooe & Co. ; one of which is the note in the declaration mentioned,'who then and there agreed in- writing, that -in case the said notes should be protested, &c. (as in the agreement,) which agreement, signed by the said R. T. Hooe & Co-, he brings here into court, &c., and concludes with- traversing the assignment to the plaintiff.
To this plea, the plaintiff replies, that he did assign the note,' in the declaration mentioned, to the plaintiff; and concludes with tendering ari issue, which the defendant joins: No notice being taken of that part of the plea which alleges the assignment to R. T. Hooe & Co.; and their agreement in consequence thereof.
3. Pled, “That Nicolson (notmentioning Moulder) has not been found insufficient to discharge the said notes in the agreement aforesaid (which is not recited in the plea) mentioned.”
To this plea the plaintiff replies, That the said Nicolson has been found insufficient to discharge the notes in the defendant’s said plea, in pleading mentioned; and tender an issue, which the defendant joins.-
4. Plea, That the said John Nicolson was possessed, and still is possessed, of an estate of greater value-, than is sufficient to discharge the amount of the aforesaid two notes assigned, by him, as aforesaid, (this aforesaid must refer to the matter contained in the second plea, there being no mention of., these notes in any other place) to the said R. T. Hooe & Co.; and this he is ready to verify.
To this plea, the plaintiff replies, That, at the time he obtained judgment against Nicolson, on the said two notes in the de7 fendant’s pleading mentioned, the said Nicolson had not property sufficient to discharge the amount of the aforesaid two notes (not saying, or either of them), whereof satisfaction of the plaintiff’s judgment, against him, could be obtained; and upon this also tenders an issue, which is joined by the defendant.
From this short view of the pleadings in this cause, it will appear that the issues joined upon the second, third and fourth pleas are perfectly immaterial.
*For the issue joined upon the first plea is wholly confined to the traverse, which is of the assignment only, leaving the matter of the agreement, which was pleaded in bar to the declaration, wholly unanswered. Now the matter of the assignment does not go to the whole cause of action: tor although it should be found that the defendant did assign the note to the plaintiff, yet unless it were also found that the note was not paid, (which is not put in issue upon the traverse only,) the defendant would not be liable to judgment upon that issue only, though found against him. Now an issue to be material must answer the whole action; but, as this answers only to part, and not to the whole matter in contest, that issue is immaterial.
The third plea is clearly bad; but the plaintiff has done all he could to help it. For, as this plea does not set forth the agreement, as it ought to have done, what is said in it respecting the notes in the agreement mentioned, is wholly unintelligible. The.plaintiff however admits he did understand, by answering as to the said notes in- the agreement aforesaid mentioned.
- The question, Whether Nicolson had been found insufficient to discharge these notes (which notes are not mentioned or described in this plea) and the issue thereupon joined is therefore wholly immaterial. For although the issue should have - been, found for the defendant, and that Nicolson might not have been found insufficient to discharge both notes; yet if, upon proper pleadings, he had been found insufficient to discharge that note upon which the suit is brought, it would have been enough.
But if this plea be 'considered as having the agreement engrafted upon it,- which I cannot conceive, still the issue would be immaterial; for the agreement relates both to 1 the insufficiency of Nicolson, and Moulder, before the plaintiff could sue. But here no notice is taken of Moulder in the plea.
The same observations will apply to the fourth plea; and the replication and issue thereupon joined; and will equally prove that issue to have been -immaterial.
*The.cause then rests wholly upon the plea of non assumpsit, and the issues joined upon it.
On the trial’ the plaintiff produced, in evidence, to the jury, the records in two different suits in Pennsylvania, one against Nicolson, the other against- Moulder. The first of these, that against Nicolson, alleges, that on the 19th of September, 1795, he made two certain notes in writing; by each of which, he promised to pay to the said William Moulder, or order, twelve months after date, $2000, for value received. That Moulder endorsed them, and thereby appointed the contents to be paid toR. T. Hooe for value received: of which premises, the said Nicolson afterwards, and after the said 'twelve months, had notice, &c. In which suit there was a judgment; a writ of fi. fa. returned nulla bona; and afterwards two writs of ca. sa. which were returned non est inventus.
*885 No bail appears to have been required, or taken in the suit.
The proceeding's in . the suit against Moulder were, mutatis mutandis, the same. A ca. sa. against his body, a cepi corpus, and a committitur returned. After which there was a petition by him for a discharge under the acts of insolvency; and the discharge allowed December 29th, 1797.
To the former of these records, the defendant, upon the trial, objected, that it should not be permitted to be read to the jury, “upon the ground, that the proceedings mentioned therein were in a suit on two notes, which the record itself proves to have been payahle to W. Moulder, junr., and by him assigned and passed to R. T. Hooe, the plaintiff; which notes, or either of them, do not appear by the said record to have been assigned to the defendant, W. Wilson, or, by the said William, to the plaintiff. But the court permitted the record to go to the jury. And the defendant tendered a bill of exceptions, which was allowed.”
And, on the other hand, the defendant produced the agreement between himself and R. T. Hooe & Co. And that one of the said notes, being the same in the declaration mentioned, was endorsed, in blank, by the defendant; which blank endorsement was, on the 6th December, 1799, filled *up, by the plaintiff’s attorney, in court; and made thereby payable to the plaintiff. And the counsel for the defendant prayed the opinion of the court, Whether the %aid blank assignment, filled up as aforesaid, transferred to the plaintiff a title or interest to the said note, sufficient to enable him to maintain his aptioi? And the court giving an opinion in the affirmative, the defendant tendered another bill of exceptions, &c.
Verdict and judgment for the plaintiff.
I shall now consider the applicability of this evidence to the.issueof non assumpsit, (the others being immaterial issues, as I have already mentioned,) upon the first count.
The first count, as we have seen, states a note made by Nicolson, and payable to Moulder; an assignment by Moulder to Wilson ; and a further assignment by Wilson to the plaintiff, R. T. Hooe.
The circumstances which it is incumbent on the plaintiff to prove in order to sustain his action are,
1.. That a note of that particular description was assigned to him by Wilson.
2. That that note was not paid by Nicol-son, although due diligence may have been used to obtain payment.
3. That due notice, that it was not so paid, was given to Wilson; and that, after such notice, (which may be by Commencing the suit,) he had not paid the same.
As to the first point. The plaintiff must recover secundum allegata et probata. In setting out his claim against the defendant, he must take care to state the ground and foundation of his action, so that there can be no doubt about it, in the breast of the jury. He has done so, by producing to the jury a note of a description perfectly corresponding with that in the declaration, so as to leave no doubt concerning its identity. The endorsements agree with the allegata in the declaration; and the filling up the blank, at the bar, is every day’s, practice.
As to the second point. He is to prove that the note was not paid by Nicolson, although due diligence may have been used to obtain payment.
*If it had been a bill of exchange, instead of a promissory note, a protest for nonpayment, upon presentation and demand, when it became due, would have been sufficient and conclusive evidence to charge the defendant.
But the case of Lee v. Love, 1 Call, 497, (unless the court should incline to reconsider the principles upon which that case was determined,) shews that, in the case of a promissory note, it is necessary to shew due diligence by bringing suit.against the maker; and a failure upon his part, notwithstanding such diligence was used, before the endorser is liable to the action of an endorsee.
The question then is, hath such due diligence been offered to the jury, by the record stated in the first bill of exceptions?
Whenever the evidence requisite to support the gist of an action must be matter of record, the record offered in evidence for that purpose must be certain to every intent. Otherwise, there might be an hundred, or a thousand different recoveries, against different defendants, upon the same evidence.
In the present case, the evidence to support the gist of the action against Wilson, (the use of due diligence against Nicolson, by suit brought upon this note,) must be matter of record. Nothing but the record, where a suit hath been actually brought, will afford this evidence; and that record, when produced, must contain certainty to every intent.
The note, described in the declaration, is a note drawn by Nicolson in favour of Moulder, endorsed by Moulder to Wilson, and by Wilson endorsed over to R. T. Hooe, the plaintiff.
The notes, described in the record, import to be notes of the same tenor and date, drawn by Nicolson in favour of Moulder, and by Moulder endorsed, and directed to be paid to R. ,T. Hooe, the plaintiff, Wilson’s name not appearing in the record.
But it is said, that the correspondence of the sums, dates and times of payment mentioned in these notes, proves them *to be the same notes. They may be the same notes: but the proof of identity consists in a perfect agreement in every part, so that no circumstance can be selected, in which there is not a perfect coincidence and correspondence.
Now a note endorsed by Moulder, and made payable to R. T. Hooe, cannot, without a solecism, be supposed to be the identical note which he had endorsed and made payable to Wilson, unless we suppose that one, or other, of these endorsements had been first cancelled, and then endorsed anew: Which would put an end to a privity between the holder of the note, and the person whose name was stricken out.
The proof, then, arising from the record does not indicate them to be the same *886 uotes. On the contrary, it would indicate that they were separate and distinct notes.
If notwithstanding- what I have said, it be supposed, that the identity of the note on which the suit is now brought with that in the record is manifest, I will ask, which of the notes in the Pennsylvania records mentioned, is the identical note upon which this suit is brought. For both cannot be this identical and individual note shewn to the jury to support the action against Wilson.
The correspondence between the sums, dates and time of payment therefore does not prove the identity; since the record from Pennsylvania shews, that there were two notes, of the same tenor and date, before the jury in that case, and here is-only one note, in the cause now before us. If there were two such notes, there might have been two hundred; and the endorsements upon those two hundred (or even two thousand) may be as various, as between the one offered in evidence, and those mentioned in the Pennsylvania record.
Here, then, is not certainty to a common intent; much less certainty to every intent.
Upon this count, then, the plaintiff cannot recover. Is he better entitled to recover upon the second count for money had and received?
Upon that count he cannot recover, unless he be ex aaquo et tjono entitled to recover .upon the whole circumstances of the case. Upon this count, the whole case is to be made out at the trial, by the evidence on both sides. 2 Burr. 1010.
Upon this count then he cannot recover, unless he has done all that the law requires him to do, in order to charge the defendant.
It is in evidence, from the bill of exceptions, that in order to make out his case at the trial, he thought it necessary to produce the Pennsylvania record to the jury.
The exception, taken-to that evidence, proves that it ought not to have been permitted to go to the jury upon that count, because it states, that the notes, in that record mentioned, or either of them, do not appear to have been assigned to the defendant, W. Wilson, or by the said Wilson to the plaintiff. Unless it did so appear, the plaintiff, ex aequo . et bono, had no right to recover against Wilson.
But, by admitting this evidence to go to the jury, they may have been influenced in finding their verdict.
Illegal or improper evidence, however unimportant it may be to the cause, ought not be confided to the jury. 2 Wash. 281.
This evidence was improper. It was not unimportant, being offered in support of the very gist of the action. It was permitted to go to the jury; and may have had such an influence on their minds as to mislead them.
I am therefore of opinion that the county-court erred in admitting it; and that the judgment of the district court, reversing it for that cause, ought to be affirmed.
ROANE, Judge.
The second bill of exceptions shews, That the defendant proved he had assigned the note in question to the firm of R. T. Hooe & Co. (consisting of three persons) by a special agreement in these words: “Whereas we have sold unto William Wilson sixteen pipes of Maderia wine for the sum of twelve hundred pounds, and have received, from him in payment, two notes of John Nicolson’s, *for two thousand dollars each, dated 19th September, 1795, at twelve months date, to William Moulder, junr., and endorsed by him and William Wilson: Now we hereby agree that, in case the said notes are protested for non-payment, we will not apply to, or call on, the said William Wilson for payment, until after we get judgment against the said Nicolson and Moulder, and they are found insufficient to discharge the same. Given under our hands this fifteenth day of June 1796. N. B. It is understood that, if Moulder does not reside in Philadelphia, we will not be obliged to issue a writ, or execution, against him. R. T. Hooe & Co.” That the said note being endorsed in blank was filled up, by the plaintiff’s attorney, in court on the trial, and made pay'able to the plaintiff. That the opinion of the court was pray-ed, Whether this assignment transferred, to him, a title to bring the action: and that the court adjudged it did.
R. T. Hooe being as distinct from R. T. Hooe & Co. as any two individuals are from each other, the decision given yesterday, in the case of Dunlop v. Harris, (ante, 16,) is expressly in point to shew that the action is not maintainable.
Whatever effect the special agreement may have in the case in other points, it has none to shew that the endorsement was to R. T. Hooe immediately; or to shew a privity between him and the defendant, without which this action is not sustainable.
On this view therefore, without going into the other important questions made in this case, I think that the judgment of the district court is right in reversing that of the hustings court: but erroneous in not directing judgment to be entered for the defendant, instead of sending the cause back for a new trial.
EEEMING, Judge.
As the writing on which this suit is brought was a mere promissory' note, and not a bill of exchange; and, as it was assigned by the defendant to R. T. Hooe & Co., and not to R. T. Hooe, I think that, according *to the decision in Dunlop v. Harris, the plaintiff could not support an action upon the note in his own name: and, consequently, that the judgment of the district court is correct, so far as it reverses that of the hustings court; but erroneous in sending the cause back for a new trial, instead of entering a judgment for the defendant.
CARRINGTON,- Judge.
The first question is, Whether Hooe alone could support an action against Wilson, or any other endorser, without an assignment from R. T. Hooe & Co.? And I think it perfectly clear' that he could not: for, without such assignment, he could have no title to the note, or its contents. The next question is, Whether the Pennsylvania record ought *887 to have been admitted, in order to shew that R. T. Hooe & Co. had used due diligence? And I think it could not; because it was not between the same parties. A third question is, Whether, after the name of Wilson had been erased in the Pennsylvania suit, it could be restored in that which was afterwards brought in the hustings court of Alexandria? And I think it could not without a forgery. The fourth question is, Whether the special count in this case was sustainable? And I think it was not; because it was contrary to the terms of the written agreement between Wilson and R. T. Hooe & Co.
This view of the subject renders it unnecessary to decide whether the insolvency of Nicolson and Moulder is sufficiently shewn; and whether due diligence was used? But I will make a few observations upon those points, as applicable to cases in general. Due diligence and insolvency may be shewn several ways. A suit in proper time, with a return o£ nulla bona, is prima facie evidence of both; but it is not conclusive: for the maker may be solvent, notwithstanding that return. In some cases a ca. sa. might be more effectual that a fi. fa. : for, although, a man may have no visible estate, he may have money, and would not permit himself to be imprisoned, rather than pay the debt. On the other hand; the return of nulla bona is not indispensable ''in all cases: for the maker may have absconded, and could not have been arrested; or he may have died, leaving no executor, or administrator, of his estate: All which would be proper objects of enquiry in a suit against the endorser. And there is nothing in the case of Lee v. Love, 1 Call, 497, leading to a contrarj' opinion: for, in that case, Lee was pressed to sue the maker by Love, who alleged that there was property; and that he would attend to the execution, and recover the money: but the other chose to consider the note as an inland bill, although it was not so, and to bring suit against Love, without attempting to recover the money from Skinker: Which circumstances put it out of his power to insist upon the insolvency of the maker. But, as before remarked, it is unimportant to pursue observations of this kind; because let the points, to which they relate, be as they nay, the plaintiff cannot recover upon the view I have taken of the case before the court.
LYONS, President.
There may be cases in which a previous suit would not be necessary ; but upon the present occasion we all agree, that the plaintiff cannot recover; and the following is to be the entry:
“The court, having maturely considered the transcript of the record of the judgments aforesaid, and the arguments of counsel, is of opinion that the judgment of the district court is erroneous. Therefore it is considered that the same be reversed and annulled, and that the appellant recover against the appellee his costs by him expended in the prosecution of his appeal aforesaid here: And this court proceeding to give such judgment as the said district court ought to have given, is of opinion that the judgment of the hustings court is also erroneous, in this, that, as the note of John Nicolson in the proceedings mentioned was payable to William Moulder, junr., who assigned it to the appellee, and he to Robert T. Hooe & Co., the endorsement and assignment thereof to the appellant, in the manner stated in the second bill of exceptions filed in this cause, did not convey *a right to him to have or maintain the present action against the appellee, who was only liable to the said Robert T. Hooe & Co., according to his special written agreement with them ; and therefore that judgment ought to have been entered for the appellee. Therefore it is further considered, that the said judgment be also reversed and annulled; and that the appellant take nothing by his bill, but for his false clamor be in mercy, &c., and the appellee go thereof without day, and recover against the appellant his costs by him expended, as well in the prosecution of his appeal in the said district court, as about his defence in the said court of hustings.” _